K&L GATES LLP
599 Lexington Avenue
New York, New York 10022
Telephone: (212) 536-3900
Facsimile:  (212) 536-3901
Robert T. Honeywell
Brian D. Koosed

*Attorneys for FirstBank Puerto Rico*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
                                            )

**In re**                                  )

                                        )

**LEHMAN BROTHERS INC.,**        )      **Case No. 08-01420 (SCC) SIPA**

                                        )

                    **Debtor.**      )
-------------------------------------------------------------x

## NOTICE OF APPEAL

      Pursuant to Federal Rules of Bankruptcy Procedure 8002 and 8003 and 28 U.S.C. § 158, notice is hereby given that FirstBank Puerto Rico, the holder of a customer claim in the above-referenced SIPA liquidation proceeding, appeals to the United States District Court for the Southern District of New York from the *Order Granting Trustee's Motion for Order Expunging FirstBank Puerto Rico's Claim and Denying FirstBank Puerto Rico's Motion for Summary Judgment* entered herein on December 1, 2015 [Dkt. No. 13109] (the "Order"), attached hereto as Exhibit A, including any and all judgments, decrees, orders, decisions, rulings, and opinions that merged into and became, or may merge into and become, part of the Order, including, but not limited to, the *Memorandum Decision Granting Trustee's Motion for Order Expunging FirstBank Puerto Rico's Claim and Denying FirstBank Puerto Rico's Motion for Summary Judgment* entered h e r e i n o n November 23, 2015 [Dkt. No. 13085] (the "Memorandum Decision"), attached hereto as Exhibit B.

The parties to the Order and Memorandum Decision appealed from and the names and addresses of their respective attorneys are as follows:

**APPELLANT / POSITION:**

FirstBank Puerto Rico, as
holder of a SIPA customer claim

Robert T. Honeywell
Brian D. Koosed
K&L GATES LLP
599 Lexington Avenue
New York, New York 10022
Telephone: (212) 536-3900
Facsimile:  (212) 536-3901

**APPELLEE / POSITION:**

James W. Giddens, as trustee for the
SIPA liquidation of Lehman Brothers Inc.

James B. Kobak, Jr.
Sarah L. Cave
Jeff Margolin
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 837-6000
Facsimile:  (212) 422-4726

Dated: December 15, 2015
        New York, New York

*/s/ Robert T. Honeywell*
Robert T. Honeywell
Brian D. Koosed
K&L GATES LLP
599 Lexington Avenue
New York, New York 10022
Telephone: (212) 536-3900
Facsimile: (212) 536-3901

*Attorneys for FirstBank Puerto Rico*

2

# Exhibit A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re

LEHMAN BROTHERS INC.,                     Case No. 08-01420 (SCC) SIPA

Debtor.

## ORDER GRANTING TRUSTEE'S MOTION FOR ORDER EXPUNGING FIRSTBANK PUERTO RICO'S CLAIM AND DENYING FIRSTBANK PUERTO RICO'S MOTION FOR SUMMARY JUDGMENT

Upon the motion dated June 26, 2014 (the "Trustee's Motion")[1] of James W.

Giddens (the "Trustee"), as trustee for the liquidation of Lehman Brothers Inc. ("LBI"), seeking

entry of an order confirming the Trustee's determination and expunging FirstBank Puerto Rico's

("FirstBank") customer claim against the LBI estate; and the Memorandum of Law of the

Securities Investor Protection Corporation in support of the Trustee's Motion;[2] and the Notice of

Motion for Summary Judgment of FirstBank (the "FirstBank Motion," ECF No. 9483); and the

Court having jurisdiction to consider the Trustee's Motion and the FirstBank Motion and the

relief requested therein in accordance with SIPA § 78eee(b)(4); and due and proper notice of the

Trustee's Motion and the FirstBank Motion having been provided in accordance with the

Amended Case Management Order (ECF No. 3466); and it appearing that no other or further

notice need be provided; and the Court having considered the evidence and memoranda

submitted in support of, and in opposition to, the Trustee's Motion and the FirstBank Motion;

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Trustee's Motion.  The Trustee initially filed a redacted version of the Trustee's Motion (ECF No. 9248). The Trustee subsequently filed an unredacted version of the Trustee's Motion (ECF No. 9720).

[2]  The Securities Investor Protection Corporation initially filed its pleading in redacted form (ECF No. 9245). It subsequently filed an unredacted version (ECF No. 9721).

and the Court having held a hearing on December 2, 2014; and upon the factual findings and

legal conclusions set forth in the Court's Memorandum Decision Granting Trustee's Motion for

Order Expunging FirstBank Puerto Rico's Claim and Denying FirstBank Puerto Rico's Motion

for Summary Judgment (the "Memorandum Decision," ECF No. 13085); and sufficient cause

appearing therefor, it is

ORDERED, that the Trustee's Motion is granted; and it is further

ORDERED, that, subject to and in accordance with the Memorandum Decision, Claim

No. 800003257 asserted by FirstBank is hereby disallowed and expunged in its entirety with

prejudice; and it is further

ORDERED, that the FirstBank Motion is hereby denied with prejudice; and it is further

ORDERED, that this Court shall retain jurisdiction to hear and determine all matters

arising from or related to this Order.


Dated:   New York, New York
         December 1, 2015



                                        /S/ Shelley C. Chapman
                                        HONORABLE SHELLEY C. CHAPMAN
                                        UNITED STATES BANKRUPTCY JUDGE

# Exhibit B

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------x
                                           :
In re:                                   :
                                           :
LEHMAN BROTHERS INC.,              :      Case No. 08-01420 (SCC) SIPA
                                           :
                       Debtor.         :
-------------------------------------------------------------------------x

**MEMORANDUM DECISION GRANTING TRUSTEE'S MOTION FOR ORDER EXPUNGING FIRSTBANK PUERTO RICO'S CLAIM AND DENYING FIRSTBANK PUERTO RICO'S MOTION FOR SUMMARY JUDGMENT**

A P P E A R A N C E S :

HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, NY 10004
By:    James B. Kobak, Jr., Esq.
        Sarah L. Cave, Esq.
*Attorneys for James W. Giddens, as Trustee for the SIPA Liquidation of Lehman Brothers Inc.*

SECURITIES INVESTOR PROTECTION CORPORATION
805 15th Street, N.W., Suite 800
Washington, DC 20005
By:    Josephine Wang, Esq., General Counsel
        Kenneth J. Caputo, Esq., Senior Associate General Counsel
*Attorneys for Securities Investor Protection Corporation*

K&L GATES LLP
1601 K Street, N.W.
Washington, DC 20006
By:    Richard A. Kirby, Esq.
*Attorneys for FirstBank Puerto Rico*

K&L GATES LLP
599 Lexington Avenue
New York, NY 10022
By:    David W. Bernstein, Esq.
        Richard S. Miller, Esq.
        Robert T. Honeywell, Esq.
*Attorneys for FirstBank Puerto Rico*

**SHELLEY C. CHAPMAN**
**UNITED STATES BANKRUPTCY JUDGE**

FirstBank Puerto Rico seeks the assistance of this Court in securing the return of certain securities pledged to Lehman Brothers Special Financing Inc. in connection with a routine interest rate swap agreement. Many of those securities ultimately were sold to Barclays Capital Inc. as part of the sale of financial assets by Lehman Brothers Inc. to Barclays immediately after commencement of both the chapter 11 proceedings filed by Lehman Brothers Holdings Inc. and this related proceeding under the Securities Investor Protection Act. Others had been permissibly rehypothecated by Lehman Brothers Special Financing Inc. to certain of its other swap counterparties.

This is the second time FirstBank seeks the Court's assistance in this regard. In its first attempt to recover its securities, FirstBank commenced a lawsuit in the United States District Court for the Southern District of New York against Barclays. The District Court eventually referred the litigation to this Court. On May 13, 2013, the Honorable James M. Peck[1] issued a Memorandum Decision Denying Motion for Summary Judgment of FirstBank Puerto Rico and Granting Motion for Summary Judgment of Barclays Capital Inc. *FirstBank Puerto Rico v. Barclays Capital Inc.*, 492 B.R. 191 (Bankr. S.D.N.Y. 2013) ("*FirstBank I*").[2] In that decision, the Court noted that the securities at issue properly fit within the definition of "Purchased Assets" under the operative documents governing the asset sale by LBI to Barclays.

---

[1] The Honorable James M. Peck retired from the bench on January 31, 2014. These cases were transferred to the Honorable Shelley C. Chapman on February 1, 2014.

[2] Prior rulings made in connection with the chapter 11 cases of LBHI and its affiliates as well as the liquidation of LBI under SIPA constitute law of the case in core proceedings such as this one. *See FirstBank I*, 492 B.R. at 194 (citing *Term Loan Holder Comm. v. Ozer Group, L.L.C. (In re Caldor Corp.)*, 303 F.3d 161, 168 n.13 (2d Cir. 2002) (noting that a "'case' triggered by a bankruptcy petition is an 'umbrella litigation often covering numerous actions that are related only by the debtor's status as a litigant[,]'" while the term "proceeding," as used in the bankruptcy context, "embraces all controversies determinable by the court of bankruptcy and all the matters of administration arising during the pendency of the case" (citing *Sonnax Indus. v. Tri Component Prods. Corp. (In re Sonnax Indus.)*, 907 F.2d 1280, 1283 (2d Cir. 1990))) (additional citation omitted).

Accordingly, the Court found that Barclays was entitled to the immunities and protections of the order approving the sale and, therefore, was not obliged to return the securities.[3]

Here, in its latest attempt to recover its securities, FirstBank has filed a customer claim in this proceeding, which it asserts would entitle it to recover the full amount of any net equity in its LBI account as of the filing date of this proceeding. Having failed in its lawsuit against Barclays – and having failed to file a claim against LBSF or LBSF's guarantor LBHI – FirstBank now pursues a recovery in this proceeding from LBI, based not on SIPA but on various other laws and regulations. Specifically, FirstBank's novel assertion of customer status is based on (i) provisions of the New York Uniform Commercial Code, (ii) SEC customer protection rules, and (iii) U.S. Treasury regulations. FirstBank has failed, however, to establish that it meets the definition of "customer" under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa *et seq*. For that reason, and for the additional reasons stated in this Memorandum Decision, the Trustee's Motion for Order Expunging FirstBank Puerto Rico's Claim is granted and FirstBank Puerto Rico's Motion for Summary Judgment is denied.

### *Procedural Background*

FirstBank Puerto Rico ("FirstBank") filed its claim against Lehman Brothers Inc. ("LBI") on January 30, 2009. The claim seeks customer treatment under the Securities Investor Protection Act ("SIPA") and recovery of the securities at issue, or, in the alternative, the market value of the securities. On September 15, 2010, James W. Giddens (the "Trustee"), as Trustee

---

[3] The Court later issued a related decision granting a separate motion by Barclays seeking sanctions for FirstBank's failure to comply with the anti-suit injunction included in the order approving the sale to Barclays (the "Sale Order"). *See FirstBank Puerto Rico v. Barclays Capital Inc.*, No. 10-04103(JMP), 2013 Bankr. LEXIS 5076 (Bankr. S.D.N.Y. Dec. 3, 2013) ("*FirstBank II*"). FirstBank appealed both *FirstBank I* and *FirstBank II*. On December 18, 2014, the District Court issued its Memorandum and Order affirming both decisions. *FirstBank Puerto Rico v. Barclays Capital Inc.*, 526 B.R. 481 (S.D.N.Y. 2014) ("*FirstBank III*"). On January 16, 2015, FirstBank filed a Notice of Appeal of *FirstBank III*. The matter is currently pending at the Second Circuit; oral argument has not yet been scheduled. *See FirstBank Puerto Rico v. Barclays Capital Inc.*, No. 15-149 (2d Cir., filed Jan. 16, 2015).

for the liquidation of LBI under SIPA, issued a letter of determination to FirstBank denying its

customer claim.  On August 1, 2012, FirstBank filed a motion for reconsideration of the letter.

Thereafter, the parties entered into, and the Court approved, a Stipulation and Agreed Order

providing that the motion for reconsideration and certain related matters[4] would be resolved via

motion by the Trustee seeking to uphold his letter of determination and to expunge FirstBank's

customer claim.

In accordance with the terms of the parties' agreement, the Trustee filed his Motion for

Order Expunging FirstBank Puerto Rico's Claim (the "Trustee's Motion") on June 26, 2014.[5]

The Securities Investor Protection Corporation ("SIPC")[6] filed its Memorandum of Law in

Support of Trustee's Motion for Order Denying the Claim of FirstBank of Puerto Rico on the

same day.[7]  FirstBank filed a Notice of Motion for Summary Judgment on July 25, 2014 [ECF

No. 9483] together with a Memorandum in Support of its Motion for Summary Judgment and

Opposition to Trustee's Motion for Order Expunging FirstBank Puerto Rico's Customer Claim

(the "FirstBank Opposition").[8]  The Trustee subsequently filed his Memorandum of Law in

---

[4] Lehman Brothers Special Financing Inc. ("LBSF"), as swap counterparty, also filed a customer claim against LBI
in connection with the securities at issue here.  By notice dated August 31, 2010, the Trustee denied LBSF's
customer claim.  LBSF objected to the Trustee's denial of its claim.  The Trustee and LBSF resolved LBSF's
customer claim through LBI's settlement agreement with Lehman Brothers Holdings Inc. ("LBHI") dated February
21, 2013 and approved by the Court on April 16, 2013 [ECF No. 6020].  LBSF did not (and will not) obtain any
recovery from LBI with respect to the securities at issue here.  In the Trustee's February 26, 2013 Motion Pursuant to
Federal Rule of Bankruptcy Procedure 9019 for Entry of an Order Approving Settlement Agreement Between the
Trustee and the LBHI Entities, the Trustee represented that LBSF agreed with LBI that no recovery is available for
assets (such as the securities at issue) that had been withdrawn from accounts at LBI prior to the commencement of
the SIPA proceeding.  ECF No. 5784 ¶ 40; Stipulation of Facts ("Stip.") [ECF No. 9547] ¶ 56.  The Trustee's letter
of determination to FirstBank denied FirstBank's customer claim because it was a "duplicate and/or amendment" of
LBSF's customer claim.
[5] The Trustee initially filed a redacted version of the Trustee's Motion together with an *Ex Parte* Motion for Entry of
an Order Authorizing Filing Under Seal of Motion to Expunge and Related Filings [ECF No. 9251].  The Trustee
filed an unredacted version of the Trustee's Motion on August 27, 2014 [ECF No. 9720].
[6] SIPC is deemed to be a party in interest in all matters arising under a SIPA liquidation proceeding.  15 U.S.C. §
78eee(d).
[7] SIPC initially filed its pleading in redacted form.  It filed an unredacted version on August 27, 2014 [ECF No.
9721].
[8] FirstBank initially filed the FirstBank Opposition in redacted form.  It filed an unredacted version on August 12,
2014 [ECF No. 9623].

Further Support of His Motion for an Order Expunging FirstBank Puerto Rico's Claim and In opposition to FirstBank Puerto Rico's Motion for Summary Judgment [ECF No. 9699], and SIPC filed its Memorandum of Law in Further Support of the Trustee's Motion for an Order Denying the Claim of FirstBank of Puerto Rico and in Opposition to FirstBank's Motion for Summary Judgment [ECF No. 9685]. Thereafter, FirstBank filed its Reply Memorandum in Support of its Motion for Summary Judgment and Opposition to Trustee's Motion for an Order Expunging FirstBank Puerto Rico's Customer Claim [ECF No. 9828]. The Court heard oral argument in December 2014 at which time it took this matter under advisement.

### *Factual Background*

The Court described many of the undisputed facts relevant to this matter in *FirstBank I*; as stated here, they are derived from that decision, the parties' submissions, and the content of earlier proceedings and decisions of the Court. The Court assumes familiarity with the undisputed facts relevant to this matter, which have been extensively set forth in *FirstBank I*, *FirstBank II*, and *FirstBank III*. The facts essential to this decision are as follows.

On January 16, 1997, FirstBank and LBSF entered into an ISDA Master Agreement with an attached Schedule (collectively, the "Master Agreement") and Credit Support Annex ("CSA") (together with the Master Agreement, the "Swap Agreement").[9] Stip. ¶ 20; Exs. SF1[10], SF2, SF3. The Swap Agreement governed the terms of certain interest rate swap transactions between FirstBank and LBSF. Stip. ¶ 22. The parties amended the applicable Master Agreement as of June 19, 2008. Stip. ¶ 24; Ex. SF4. Pursuant to the CSA, and in order to provide agreed credit support, FirstBank was required to post specified types of collateral to secure all of its

---

[9] The District Court provided a thorough explanation of swaps and how they affect various actors in the financial markets in *FirstBank III*. *FirstBank III*, 526 B.R. 481 at 484-86.

[10] References to "Ex. SF" are to the indicated exhibit to that certain Stipulation of Facts dated as of June 25, 2014 [ECF No. 9547].

obligations under the Swap Agreement (the "Posted Collateral"). *See* Ex. SF3 ¶¶ 3, 5. LBI did not sign, and was not a party to, the Swap Agreement. *See* Ex. SF3 at 1. In the CSA, FirstBank agreed that LBSF was "entitled to hold Posted Collateral or to appoint an agent (a "Custodian") to hold Posted Collateral for [LBSF]." Ex. SF3 ¶ 6(b)(i).[11]

At all relevant times, LBI held the Posted Collateral in a custodial account at JPMorgan Chase. Stip. ¶ 27. LBI used the same account at JPMorgan Chase for the collateral that it received from LBSF's other counterparties that it held as LBSF's custodian. Legotte Decl.[12] ¶ 10. For its own record-keeping purposes, then, LBI established a Pledge Account (No. 5797550) on its books to distinguish between assets held for LBSF in connection with the Swap Agreement and assets held for LBSF in connection with transactions with other counterparties. *Id.* ¶ 19. LBI coded the account at JPMorgan Chase as a "safekeeping" account in its stock record. *Id.* ¶ 11. This did not, however, impose any restriction on LBSF's use of the securities held in the account or restrict LBI from taking any action at LBSF's direction with respect to the Posted Collateral. *Id.* LBI coded the Pledge Account in its stock record as a "customer account" for the benefit of LBSF, so as to restrict LBI from using the Pledged Collateral while it was holding the Pledged Collateral for the benefit of LBSF. *Id.* ¶¶ 20, 21.

LBSF and LBI documented LBI's duties and obligations with respect to the Posted Collateral in the SACA. *See* Exs. SF5, SF6. FirstBank did not sign any agreement relating to,

---

[11] The parties quarrel over whether LBSF appointed LBI as Custodian. The Trustee, relying on paragraph 13(*l*)(ii) of the CSA, asserts that "LBSF appointed LBI to serve as its Custodian and so informed FirstBank." Trustee's Mot. ¶ 11. FirstBank is correct, however, that paragraph 13(*l*)(ii) provides that securities or obligations to be paid to LBSF be delivered to "Chase, for credit to the account of LBSF, as agent for [LBSF]" while paragraph 13(g)(i), by contrast, provides that "[i]nitially, the Custodian for [LBSF] is: Not applicable." *See* FirstBank Opp'n. 4-5; Ex. SF 3 ¶¶ 13(*l*)(ii), 13(g)(i). Regardless of whether LBI ever was appointed formally as Custodian under the CSA, it is clear that, under the terms of the Securities Account Control Agreement between LBSF and LBI (the "SACA"), the Posted Collateral was held at LBI "in trust for the benefit of [LBSF] as 'entitlement holder.'" Ex. SF 5 §1(a).

[12] References to "Legotte Decl." are to the Declaration of Leonard J. Legotte in Support of Motion for Order Expunging FirstBank Puerto Rico's Claim [ECF No. 9546].

and was not a party to, the SACA.  Ex. SF5 at 1, 6.  The SACA does not specify any duty or

obligation that LBI owed to FirstBank.  *See* Ex. SF5.  LBI's primary obligation under the SACA

was to receive the Posted Collateral from LBSF counterparties, including FirstBank, and then to

comply with LBSF's "entitlement orders."  Specifically, Section 3(a) of the SACA provides that

> [i]f at any time [LBI] shall receive any "entitlement order" (within the
> meaning of Section 8-102(a)(8) of the UCC) or other instruction from [LBSF],
> including without limitation directing the transfer or redemption of any
> financial asset credited to [the Pledge Account], [LBI] shall comply with such
> entitlement order or instruction without further consent by [FirstBank] or any
> other person.

Ex. SF5 § 3(a).

        As of September 19, 2008, the date of the LBI SIPA filing (the "Filing Date"), the Posted

Collateral that had been posted by FirstBank to LBSF as "Secured Party" under the CSA

consisted of positions in twenty-three securities with identified CUSIP numbers.  Stip. ¶ 43.

Under paragraph 6(c) of the CSA, LBSF, as "Secured Party" under the CSA, had "the right to …

sell, pledge, rehypothecate, assign, invest, use, commingle or otherwise dispose of, or otherwise

use in its business any Posted Collateral it holds, free from any claim or right of any nature

whatsoever of [FirstBank], including any equity or right of redemption by [FirstBank]."  Ex. SF3

¶ 6(c); *see also id.* ¶ 13(g)(ii).  The parties agreed, however, that "[LBSF would] be deemed to

continue to hold all Posted Collateral … regardless of whether [LBSF] … exercised any rights

with respect to the Posted Collateral."  Ex. SF3 ¶ 6(c).  Moreover, LBSF sent to FirstBank on a

monthly basis a "mark-to-market" statement that identified each position in the Posted Collateral

as an LBSF obligation to FirstBank.  *See* Exs. SF18, SF19.

        As was permitted under the terms of the CSA, between February 6, 2008 and September

12, 2008, LBI acquired certain of the Posted Collateral in a series of open repurchase

transactions[13] with LBSF (the "LBSF-LBI Repos"). *FirstBank I*, 492 B.R. at 195. The LBSF-LBI Repos were governed by a Master Repurchase Agreement (the "Lehman MRA") under which title to the Posted Collateral passed to LBI. *Id.* at 195; *see* Ex. SF 20 ¶ 8. The Lehman MRA further provided that, subject to certain limitations, "nothing in this Agreement shall preclude [LBI] from engaging in repurchase transactions with the [Posted Collateral] or otherwise pledging or hypothecating the [Posted Collateral]." *FirstBank I*, 492 B.R. at 195; *see* Ex. SF 20 ¶ 8.

Under the terms of the Lehman MRA, LBSF had the right (but not the obligation) to repurchase the Posted Collateral. *See FirstBank I*, 492 B.R. at 195; SF Ex. 20 ¶ 3(b). To that end, the Lehman MRA included a close-out provision requiring LBSF to tender the defined Repurchase Price in immediately available funds. *FirstBank I*, 492 B.R. at 195; SF Ex. 20 ¶¶ 2(o), 3(c). LBI documented the LBSF-LBI Repos in its stock ledger for U.S. dollar-denominated fixed-income instruments and in trade confirmations provided to LBSF stating that LBI had bought the Posted Collateral from LBSF and listing the prices paid by LBI to LBSF in immediately available funds. *FirstBank I*, 492 B.R. at 195.

On September 15, 2008, LBSF failed to make a net payment due under the Swap Agreement.[14] Such failure to pay constituted an event of default under the Swap Agreement.[15] *See FirstBank I* 492 B.R. at 195; *see also* SF Ex. 2[16] ¶ 5(a)(i). On that same day, LBHI and

---

[13] The District Court provided a detailed explanation of repos, how they are documented, and how they are used as financial tools in *FirstBank III*. *FirstBank III*, 526 B.R. at 486-87.

[14] FirstBank sent an e-mail on September 16, 2008 (the "September 16 Notice") stating that it had not received LBSF's swap payments and demanding that those payments be made. Stip. ¶ 44; SF Ex. 21.

[15] The Swap Agreement provided that such failure to pay could have been remedied on or before the third business day after notice of such failure has been provided. *See* SF 2 ¶ 5(a)(i). As was later noted by FirstBank in the Termination Notice (defined below), LBSF failed to cure within three business days after receipt of the September 16 Notice.

[16] As was consistent with industry practice, the executed copy of the Master Agreement omitted pages 2 through 17 of the ISDA form, leaving only pages 1 and 18 and the Schedule. Stip. ¶ 20. Exhibit SF 2 is a blank copy of the 1992 version of the ISDA Master Agreement for Multicurrency-Cross Border transactions.

certain of its subsidiaries[17] each filed a voluntary petition under chapter 11 of title 11 of the

United States Code (the "Bankruptcy Code"). *See In re Lehman Brothers Holdings Inc. et al.*,

No. 08-13555 (Bankr. S.D.N.Y. 2008). Because LBHI had guaranteed LBSF's obligations under

the Swap Agreement, LBHI's filing for relief under the Bankruptcy Code also constituted an

event of default under the Swap Agreement. *See* SF Ex. 2 ¶ 5(a)(vii). By virtue of these events

of default, LBSF's right to use the Posted Collateral under the CSA terminated on September 15,

2008 (the "Collateral Use Cutoff Date"). *See FirstBank I*, 492 B.R. at 196; Ex. SF3 ¶ 6(c).

Accordingly, pursuant to the terms of the Swap Agreement, the LBSF-LBI Repos, all of which

had occurred prior to the Collateral Use Cutoff Date, constituted permissible exercises of the

right of LBSF as swap counterparty to dispose of the Posted Collateral "free from any claim or

right of any nature whatsoever of [FirstBank], including any equity or right of redemption by

[FirstBank]." Ex. SF3 ¶ 6(c).

As of the Filing Date, LBSF had rehypothecated to its derivative counterparties eight

positions (in whole or in part) that comprised Posted Collateral.[18] Stip. ¶ 40; Stip. Table "D".

Also as of the Filing Date, the remainder of the Posted Collateral was the subject of open repo

transactions between LBSF and LBI. Stip. ¶ 36; Stip. Table "B". That is, LBI had acquired and

paid LBSF for the securities, but LBSF never tendered the agreed repurchase amount to LBI.

After having acquired the Posted Collateral under the Lehman MRA, LBI "engag[ed] in

repurchase transactions with the [Posted Collateral] or otherwise pledg[ed] or hypothecat[ed] the

[Posted Collateral]." SF20 ¶ 8; Stip. ¶ 39; Stip Table "C". LBI consummated its final repo

transaction involving the Posted Collateral with Barclays on September 18, 2008 (the "Barclays

Repo"). Stip. ¶¶ 39, 41. The parties never closed out that transaction. Legotte Decl. ¶ 27.

---

[17] LBSF is a subsidiary of LBHI, but did not file its own chapter 11 petition until October 3, 2008.

[18] LBSF has not secured the return of any position from any counterparty.

Instead, LBI and Barclays agreed to terminate the Barclays Repo as part of the sale of most of

LBI's assets (including that portion of the Posted Collateral then in the possession of LBI) to

Barclays pursuant to that certain Asset Purchase Agreement dated September 16, 2008 among

LBI, LBHI, and Barclays.  *Id.*; Stip. ¶ 41.  By entry of the Sale Order, the Court approved the

sale, which closed on September 22, 2008.  ECF No. 3[19]; Stip. ¶ 41.  Following the termination

of the Barclays Repo, LBI no longer held any portion of the Posted Collateral.  *See FirstBank I* at

199 (noting that "[t]he Court has no difficulty in finding that the [Posted Collateral] properly [is]

catalogued as Purchased Assets," i.e., the assets acquired by Barclays under the Asset Purchase

Agreement).

On September 25, 2008, FirstBank delivered a notice (the "Early Termination Notice") to

LBSF designating September 26, 2008 as an "Early Termination Date" under the Swap

Agreement and demanding the return of all securities that FirstBank had pledged to LBSF as

collateral.  Stip. ¶ 45; Exs. SF 23, SF 23.  From approximately March 31, 2009 through July 23,

2009, FirstBank and representatives of the chapter 11 estates engaged in a closeout process of the

Swap Agreement.  *See FirstBank I*, 492 B.R. at 198; Stip. ¶ 46; Ex. SF 24.  The parties'

exchange of data and analyses culminated in LBSF's acknowledgement that it owed FirstBank

$61,446,830.99, which amount comprises the value of the Posted Collateral less $2,464,657.90 –

the amount owed by FirstBank to LBSF as the net balance of the swap transactions.  Stip. ¶¶ 46,

47; Ex. SF 24.  The estate representatives informed FirstBank that it would need to file a claim

"against the estate" as to the excess collateral.  *FirstBank I*, 492 B.R. at 198.

On January 30, 2009, FirstBank filed its customer claim against LBI.  Ex. SF 25.

FirstBank did not file a claim against LBSF or against its guarantor LBHI.  *See FirstBank I*, 492

---

[19] The parties attached a copy of the Sale Order as PD 20 to that certain Joint Appendix of Public Documents
Relating to the Litigation of FirstBank's Claim Against Lehman Brothers Inc. [ECF No. 9250].

B.R. at 198 (observing that FirstBank "inexplicably"[20] has not filed a proof of claim against its

counterparty, LBSF, or LBSF's guarantor, LBHI"); Stip. ¶ 49.  On December 21, 2009,

FirstBank filed a lawsuit against Barclays, which lawsuit was the subject of *FirstBank I*,

*FirstBank II*, and *FirstBank III*.  *See FirstBank I*, 492 B.R. at 192.

### *Legal Standards*

Because FirstBank filed its own summary judgment motion rather than simply

responding to the Trustee's Motion, the Court will address the standard and burden of proof

applicable to each motion in turn.

Under section 502(b)(1) of the Bankruptcy Code,[21] a claim may not be allowed to the

extent that "such claim is unenforceable against the debtor and property of the debtor, under any

agreement or applicable law … ."  11 U.S.C. § 502(b)(1).  While a proof of claim constitutes

*prima facie* evidence of the validity and amount of a claim under Fed. R. Bankr. P. 3001(f),

where an objection refuting at least one of the claim's essential allegations has been asserted, the

burden shifts to the claimant to demonstrate the validity of the claim.  *See In re Oneida, Ltd.*, 400

B.R. 384, 389 (Bankr. S.D.N.Y. 2009), *aff'd, Peter J. Solomon Co. L.P. v. Oneida, Ltd.*, No. 09

Civ. 2229 (DC), 2010 U.S. Dist. LEXIS 6500 (Jan. 22, 2010).

Under the terms of SIPA, which provides for protection of "customers" of an insolvent

broker-dealer, protection does not extend to all creditors of the insolvent broker-dealer.

Protection extends only to those creditors that meet the SIPA definition of "customer."  *SEC v.

Packer, Wilber & Co.*, 498 F.2d 978, 983 (2d Cir. 1974); 15 U.S.C. § 78*lll*(2).  Whether a

---

[20] At oral argument, counsel to FirstBank explained that FirstBank "chose not to make a claim against LBSF
because the holder of the collateral and [FirstBank's] rights under the treasury regulations confirm that the right to
demand this collateral from the entity that actually held it."  12/02/14 Tr. 37:6-10 (Kirby).

[21] "To the extent consistent with [SIPA], a liquidation proceeding shall be conducted in accordance with, and as
though it were being conducted under chapters 1, 3, and 5 and subchapters I and II of chapter 7 of title 11."  15
U.S.C. § 78fff(b).

creditor will qualify as a "customer" is construed narrowly. *See In re MV Secs., Inc.,* 48 B.R. 156, 160 (Bankr. S.D.N.Y. 1985) (noting that the Second Circuit has "approved a narrow interpretation of the 'customer' definition in SIPA") (citations omitted). Moreover, "it is well-established in the Second Circuit that a claimant bears the burden of proving that he or she is a 'customer' under SIPA." *Mishkin v. Siclari (In re Adler, Coleman Clearing Corp.),* 277 B.R. 520, 557 (Bankr. S.D.N.Y. 2002) (citations omitted).

Summary judgment is appropriate where there is "no genuine dispute as to any material fact," and the moving party is entitled to "judgment as a matter of law." Fed. R. Civ. P. 56(a); *see NML Capital v. Republic of Argentina,* 621 F.3d 230, 236 (2d Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986); *Redd v. Wright,* 597 F.3d 532, 535-36 (2d Cir. 2010)). The court must view the facts in the light most favorable to the non-moving party, and must resolve all ambiguities and draw all inferences against the moving party. *See NetJets Aviation, Inc. v. LHC Communs., LLC,* 537 F.3d 168, 178 (2d Cir. 2008) (citing *Liberty Lobby,* 477 U.S. at 255; *Coach Leatherware Co. v. AnnTaylor, Inc.,* 933 F.2d 162, 167 (2d Cir. 1991)). In determining whether to grant a motion for summary judgment, the court is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.,* 444 F.3d 158, 162 (2d Cir. 2006) (quoting *Liberty Lobby,* 477 U.S. at 249 (internal quotation marks omitted)).

In order to determine whether the parties have satisfied the standard applicable to their respective motions, the Court must examine (i) whether, as is asserted by the Trustee, FirstBank's claim is prohibited by the doctrine of collateral estoppel, and, if the claim is not prohibited, (ii) whether FirstBank meets the definition of "customer" under SIPA such that it would be entitled to assert a customer claim against LBI. With respect to the validity of its

claim, the burden falls squarely on FirstBank. Because the Trustee has refuted FirstBank's claim with "evidence equal in force to the prima facie case," FirstBank must prove by a preponderance of the evidence that its claim should be allowed. *See Oneida*, 400 B.R. at 389.

### Discussion

#### Collateral Estoppel Bars FirstBank's Claim

The Trustee asserts that this Court already has decided the key issues that collaterally estop FirstBank from pursuing its claim against LBI. Specifically, the Trustee submits that the Court's findings[22] that (i) the LBSF-LBI Repos were proper in all respects; (ii) LBI obtained legal title to the Posted Collateral by virtue of the LBSF-LBI Repos; and (iii) LBI's subsequent disposal of the securities rendered FirstBank's claim unenforceable against LBI. The Court agrees.

The doctrine of collateral estoppel provides that "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). The sale of the Posted Collateral resulted in LBI owning it "free from any claim or right of any nature whatsoever of [FirstBank]." *FirstBank I*, 492 B.R. at 196. In *FirstBank III*, the District Court explained that once a secured party rehypothecates collateral and, thereby, transfers title to the collateral to some other person, the pledgor is left with a right in contract to demand that the secured party return the collateral under the terms of the parties' credit support annex. 526 B.R. at 492. "It follows that, once [LBSF] sold the [Posted Collateral] to [LBI]

---

[22] *FirstBank I* addressed 20 of the 23 securities that comprise the Posted Collateral. *FirstBank I*, 492 B.R. at 192. The rehypothecation of the remaining Posted Collateral was not before the Court in that matter. However, for purposes of the instant motions, the Court finds that such rehypothecation was not materially different from the sale at issue in *FirstBank I*. Under the CSA, LBSF was permitted to "sell" or "rehypothecate" the Posted Collateral. Accordingly, the Court's conclusions as to the sale of the Posted Collateral apply equally to its rehypothecation. *See id.* at 195.

pursuant to the [CSA], FirstBank lost all rights to the [Posted Collateral] as against [LBI] (or any

subsequent transferee). Instead, the [Posted Collateral] became outright property of [LBI] and

FirstBank retained only contractual rights against its own counterparties … ." 526 B.R. at 492.

A fundamental component of a "claim" under the Bankruptcy Code is "a right to payment." 11

U.S.C. § 101(5). FirstBank's assertion that it has a right to payment on account of property

owned by LBI is illogical. Indeed, the District Court has described FirstBank as a "person [with]

no interest whatsoever in the property at stake." *FirstBank III*, 526 B.R. at 495. The Court could

end its analysis here. Nonetheless, in light of the extensive briefing on the issue of customer

status, it seems prudent to address FirstBank's arguments in the hope that this saga can be

concluded once and for all. Even if the Court's (and the District Court's) prior holdings did not

conclusively establish that FirstBank has no claim against LBI, FirstBank's inability to satisfy

the definition of "customer" under SIPA would likewise preclude any recovery against LBI.

### *FirstBank is Not a Customer Under SIPA*

SIPA affords protections only to its customers, defined by the statute as

> any person … who has a claim on account of securities received, acquired, or
> held by the debtor in the ordinary course of its business as a broker dealer
> from or for the securities accounts of such person for safekeeping, with a view
> to sale, to cover consummated sales, pursuant to purchases, as collateral,
> security, or for purposes of effecting transfer.

15 U.S.C. § 78*lll*(2).

The parties quarrel over whether LBI received the Posted Collateral "from or for the

securities account[]" of FirstBank. Both this Court and the District Court have recognized that,

with respect to depositing the Posted Collateral, FirstBank's relationship was with LBSF. *See*

*FirstBank I*, 492 B.R. at 193 (noting that FirstBank deposited the Posted Collateral "with LBSF

under the terms of a governing ISDA Master Agreement"); *FirstBank III*, 526 B.R. at 487

(explaining that "FirstBank was required to post significant amounts of collateral to [LBSF]").

The Swap Agreement supports these conclusions. Under the CSA, FirstBank agreed that LBSF

was "entitled to hold Posted Collateral or to appoint an agent (a "Custodian") to hold Posted

Collateral for [LBSF]." CSA ¶ 6(b)(i). Furthermore, in its papers, FirstBank admits that "LBSF,

in its capacity as secured party, was deemed to continue to hold the collateral that FirstBank had

delivered, regardless of whether LBSF exercised its right to sell, pledge, rehypothecate or

otherwise use the Posted Collateral." FirstBank Opp'n at 8. LBSF and LBI documented LBI's

duties and obligations with respect to the Posted Collateral in the SACA. To be sure, FirstBank

was required to deliver the Posted Collateral to LBI, but the Posted Collateral was held in the

Pledge Account that had been established as a "customer account" for the benefit of LBSF. The

only reasonable conclusion based on these facts is that FirstBank had a relationship with LBSF

and not LBI.

Nonetheless, FirstBank asserts that "it does not matter that FirstBank and LBI did not

sign a formal contract governing their relationship" and asks the Court to look to the Uniform

Commercial Code ("UCC") to determine whether FirstBank held a "securities account" at LBI

under UCC § 8-501(a). That section provides that a "securities account" is an "account to which

a financial asset is or may be credited in accordance with an agreement under which the person

maintaining the account undertakes to treat the person for whom the account is maintained as

entitled to exercise the rights that comprise the financial asset." UCC § 8-501(a). "Agreement"

is also a defined term under the UCC. It is "*the bargain of the parties in fact, as found in their

language* or inferred from other circumstances, including … course of dealing." UCC § 1-

201(3) (emphasis added). FirstBank essentially urges the Court to ignore half of definition of the

term and look only to the parties' course of dealing and the "implication" that LBI, by holding

15

the Pledge Account for the benefit of LBSF, owes FirstBank a customer claim. The UCC and

the Swap Agreement are clear, however, and neither establishes a "customer" account at LBI for

FirstBank.

The Second Circuit has "consistently emphasized that to be a customer [as defined by

SIPA], an investor must have 'entrusted' property to the broker-dealer." *CarVal UK Limited v.*

*Giddens (In re Lehman Brothers Inc.)*, 791 F.3d 277, 282 (2d Cir. 2015). However, "mere

delivery," which is the extent of the relationship between FirstBank and LBI, "is not

entrustment." *Id.* at 283. Rather, entrustment involves a "customer handing assets over to a

broker-dealer so that the broker-dealer may do business on the customer's behalf." *Id.* (citation

omitted).

As was the case in *CarVal*, here the delivery of securities by FirstBank to LBI shared

"many, if not most of the characteristics that the Second Circuit focused on in finding that the

claimant in *SEC v. F.O. Baroff Co.*, 497 F.2d 280 (1974), did not entrust securities to his broker-

dealer." *CarVal*, 791 F.3d at 283. Specifically,

> [LBI] did not sell the [Posted Collateral] to facilitate further securities trading
> on behalf of [FirstBank] or use the Purchased Securities to make margin
> purchases of further securities on behalf of [FirstBank]. [FirstBank] had no
> reasonable expectation that [LBI] would sell or use the [Posted Collateral] in
> the near future for these purposes on behalf of [FirstBank]. . . . [LBI] had
> acquired title to the [Posted Collateral] through the Lehman MRA and, as was
> its right, used the [Posted Collateral] as collateral or for other repurchase
> agreements.

*Id.* Here, the only third party on whose behalf LBI was doing business was LBSF. It follows,

then, that any association between LBI and FirstBank was not one of broker-dealer/customer.

Even if FirstBank had a "securities account" at LBI and had entrusted property to LBI as

broker-dealer, it would still not be entitled to a customer claim. As noted, as of the Filing Date,

LBSF had either rehypothecated to derivative counterparties or sold to LBI pursuant to the

16

LBSF-LBI Repos the entirety of the Posted Collateral.  LBI, in turn, transferred the Posted

Collateral it had purchased under the Lehman MRA to Barclays on September 18, 2008 in

connection with the Barclays Repo.[23]  Thus, LBI did not hold any Posted Collateral on the Filing

Date.  While "customers" of a failed broker-dealer are entitled to reimbursement on their "net

equity" claims, *see In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 237 (2d Cir. 2011),[24]

"[i]t is not possible to compute a 'net equity' claim for accounts … that do not hold any

securities or cash."  *In re Lehman Bros. Inc.*, 462 B.R. 53, 63 (Bankr. S.D.N.Y. 2011).  Indeed,

allowing FirstBank's claim would essentially require LBI, a contractual stranger to FirstBank, to

(i) pay twice for the securities it purchased pursuant to the LBSF-LBI Repos, and (ii) pay a

customer claim for the rehypothecated securities that were withdrawn from LBI's custody prior

to the Filing Date.

FirstBank's insistence that the Trustee and SIPC mischaracterize how securities are held

in the market misses the mark on several levels.  FirstBank asserts that the "modern indirect

holding system for securities … is grounded on … interests in *securities positions* … and not on

the physical location of *securities*."  FirstBank Reply at 15 (emphasis in original).  According to

FirstBank, then, "netting long positions of a customer by short positions of *third parties* …

would eviscerate the purpose of SIPA."  *Id.* at 18.  To the contrary, adopting FirstBank's

arguments would contradict the previous decisions of this Court and the District Court describing

it and would effectively rewrite SIPA itself.  LBSF permissibly rehypothecated and/or sold the

Posted Collateral.  FirstBank was not a customer of LBI.  The loss FirstBank incurred was not

---

[23] As noted, the securities that had been transferred in connection with the Barclays Repo comprised in part the "Purchased Assets" under the Asset Purchase Agreement that this Court approved via the Sale Order.

[24] "Net equity" is determined under SIPA by "calculating the sum which would have been owed by the debtor to such customer if the debtor had liquidated ... all securities positions of such customer" less any indebtedness such customer might owe to the debtor. SIPA § 78*lll*(11).

due to the failure of its broker-dealer, but by its own failure to submit a claim against its counterparty or credit support provider.

### Conclusion

The Court has considered FirstBank's remaining arguments. To the extent that they are not expressly addressed, the Court finds that these arguments lack merit. For the reasons stated, the Trustee's Motion is granted and FirstBank's Motion for Summary Judgment is denied. The Trustee is directed to settle an order consistent with this Memorandum Decision.

Dated: November 23, 2015
New York, New York

/s/ Shelley C. Chapman
UNITED STATES BANKRUPTCY JUDGE